**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RICHARD W. HARVEY, SR.,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 11 CV 1815** |
| | § | |
| **MONTGOMERY COUNTY, TEXAS,** | § | |
| **BRETT LIGON, TOMMY GAGE,** | § | |
| **JONTHAN DEWEY AND** | § | |
| **STEVEN ORTIZ,** | § | |
| **Defendants** | § | |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO**
**FED. R. CIV. P. 12(b)(1) AND (6) AND BRIEF IN SUPPORT, AND MONTGOMERY**
**COUNTY, TEXAS'S MOTION TO DISMISS BRETT LIGON, TOMMY GAGE,**
**JONATHAN DEWEY AND STEVEN ORTIZ PUSUANT TO TEX. CIV. PRAC. & REM.**
**CODE § 101.106 AND BRIEF IN SUPPORT AND, ALTERNATIVELY,**
**MOTION FOR MORE DEFINITE STATEMENT**

TO THE HONORABLE JUDGE ELLISON:

NOW COME MONTGOMERY COUNTY, TEXAS, BRETT LIGON, TOMMY GAGE,

JONATHAN DEWEY AND STEVEN ORTIZ, Defendants in this action and move, pursuant to

Fed. R. Civ. P. 12(b)(1) and (6), that the claims in this action be dismissed. Montgomery County,

Texas moves that the state claims against all other defendants be dismissed pursuant to Tex. Civ.

Prac. & Rem. Code § 101.106 (e) and, alternatively, moves for a more definite pleading

pursuant to Fed. R. Civ. P. 12(e), and, as grounds therefor, respectfully shows the Court as

follows:

**TABLE OF CONTENTS**

Table of Authorities ……………………………………………………..………….. 2
    Cases…………………………………………………………………………...…… 2
    Constitutional Provisions ………………………………………………………….4
    Statutes ……………………………………………………………………..…….. 4
    Rules ………………………………………………………………………...…….. 4

*Defendants Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6),and*
*TEX. CIV. PRAC. & REM CODE §101.106 and in the Alternative, Motion for More Definite Statement*

Page 1

Nature and Stage of Proceeding …………………………………………....……… 4
Background Information …………………………………………………….....……5
Issues to be Ruled Upon; Standard of Review ……………………………….....…… 5
Summary of Argument ………………………………………………………….....…7
Argument and Authorities ……………………………………………………….....…9
    I.     Municipal Liability ……………………………………………….....……9
    II.    District Attorney's Prosecutorial Immunity ……………………………12
    III.   Failure to State Prima Facie Claim Against Sheriff …………………….…13
    IV.   Deputies' Qualified Immunity ……………………………………………14
          A.  Unreasonable Search Claim ……………………………………15
          B.  First Amendment Claim ………………………………………19
          C.  Use of Excessive Force Claim ………………………………….....20
          D.  Failure to Give Reasonable Medical Care Claim …………………………22
    V.     Montgomery County's Sovereign Immunity from State Claims ……………23
    VI.   Motion to Dismiss State Claims Against Individual Defendants ……………24
    VII.  Defendants' Motion for More Definite Pleading ……………………………25

## TABLE OF AUTHORITIES

Cases

*Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)…….....……14, 15

*Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)………………………..21

*Bennett v. Pippin*, 74 F.3d 578, (5th Cir.), cert denied, 519 U.S.817, 117 S.Ct. 68 (1996). …….9

*Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)…………………………21

*Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 703 (1973). ………………..15

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1996)………………………………6, 12

*City of Oklahoma v. Tuttle*, 471 U.S. 808, 205 S.Ct. 2427, 85 L.Ed.2d 791 (1995)..………..10

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 923 (1988)……………..……10

*Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)……………...……14

*Enlow v. Tishomingo County, Miss.,* 962 F.2d 501, (5th Cir. 1992)……………………………18

*Estelle V. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)…………………………22

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993)……………………6, 11

*Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)…………………19

*Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 2007)……………………………………………22

*Defendants Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6),and*
*TEX. CIV. PRAC.& REM CODE §101.106 and in the Alternative, Motion for More Definite Statement*

*Harlow v. Fitzgerald*, 47 U.S. 800, 102 S.Ct. 2727, 73 L.Ed. 396 (1982)………….……6, 14

*Imbler v. Pachetman*, 424 U.S. 406, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)…………….……6, 12

*James v. Texas Collin County*, 535 F.3d 365 (5th Cir. 2008)..……………………….……9, 10

*Johnson v. Glick*, 481 F.2d 1028, cert denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed. 324 (1973).

………………………………………………………………………………….....…20

*Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994)………………………………………..24

*Malley v. Briggs*, 475 U.S.335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)…………………15, 21

*Monell v. Department of Social Services*, 436 U.S. 658, 658 S.Ct. 2018, 2037 (1978)….……9

*Nisselson v. Lernout*, 469 F.3d 143 (5th Cir. 2006)………………………………….……17

*Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)……………………13

*Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed2d 288 (1967). ………………………12

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001)…………………………………9,10

*Ray v. Township of Warren*, 626 F.3d 170 (3rd Cir. 2010)……………………..………...16, 17

*Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002)……………………………………….20

*Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir. 1996)………………………………..……6

*Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)……………..……15

*Silverman v. Ballantine*, 694 F.2d 1091, 1096 (7th Cir. 1982)……………………………..20

*Smith v. Davis*, 999 S.W.2d 409 (Tex. App.—Dallas 1999)..……………………..……………9

*Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217 (2002)…………………………7

*Thompson v. Upshur County*, 245 F.3d 447 (5th Cir. 2001)………………………………..…..14

*United States v. Bute*, 43 F.3d 531 (10th Cir. 1994)…………………………………..……..16

*United States v. Erickson*, 991 F.2d 529 (9th Cir. 1992)………………………………………16

*United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)……………16

*United States v. Pichany*, 687 F.2d 204 (7th Cir. 1982)..……………………………………16

*United States v. Quezada*, 448 F.3d 1005 (8th Cir. 2006)……………………………..……15

*United States v. Rohig*, 98 F.3d 1506 (6th Cir. 1995)…………………………………..……15

*Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984)……………………………………10

*Wichita Falls State Hospital v. Taylor*, 106 S.W.3d 692 (Tex. 2002)…………………………23

<u>Constitutional Provisions</u>
U.S. CONST. amend. I …………………………………………………..…8, 19, 25

U.S. CONST. amend. IV …………………………………………...…8, 15, 16, 17, 18, 20, 21, 25

U.S. CONST. amend. V …………………………………………………………10, 22, 25

U.S. CONST. amend. VIII …………………………………………………………22, 25

U.S. CONST. amend. XIV …………………………………………………………...22, 25

<u>Statutes</u>
42 U.S.C. § 1983…………………………………………………………...6, 11, 12, 13

TEX. HEALTH AND SAFETY CODE §771.001…………………………………………………23

TEX. CIV. PRAC. & REM. CODE § 101.021……………………………………………..…..…23

TEX. CIV. PRAC. & REM. CODE § 101.062…………………………………………………23

TEX. CIV. PRAC. & REM. CODE § 101.106………………………………………………7, 24

<u>Rules</u>
Fed. R. Civ. P. 12(b)(1) …………………………………………………………7, 25

Fed. R. Civ. P. 12(b)(6) …………………………………………5, 6, 9, 12, 15, 25

Fed. R. Civ. P. 12(e) …………………………………………………………7, 25

## NATURE AND STAGE OF PROCEEDING

Plaintiff, Richard W. Harvey, Sr. ("Plaintiff") filed this Complaint alleging various constitutional violations and other claims against Montgomery County, Texas, ("Montgomery County") Brett Ligon, ("District Attorney Ligon") Tommy Gage, ("Sheriff Gage") Jonathan

*Defendants Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6),and*
*TEX. CIV. PRAC. & REM CODE §101.106 and in the Alternative, Motion for More Definite Statement*

Dewey and Steven Ortiz, (collectively, the "Defendant Deputies"). He also makes several state law claims for intentional torts. He seeks actual and punitive damages, attorney's fees and injunctive relief.

## BACKGROUND INFORMATION

This lawsuit stems from an incident that occurred on May 16, 2009 at Plaintiff's residence. Doc. 1, p. 3, ¶ 8. At approximately 3:30 a.m., Montgomery County 9-1-1 received a call from Plaintiff's son, Richard Harvey, Jr., who had taken the portable home phone from Plaintiff's home next door to make a call to the police. Id. The Defendant Deputies went to Plaintiff's home to investigate the call. Doc. 1, p.4, ¶ 9. According to the Plaintiff, he came out of his home to find out why the Defendant Deputies were at his residence. Doc. 1, p.6, ¶ 15. Plaintiff was unhappy that the Defendant Deputies were there and went inside his home to allegedly call the Sheriff to complain. Doc. 1, p. 7, ¶15. When Plaintiff made a move to go inside, the Defendant Deputies restrained Plaintiff. Id. Plaintiff complained of chest pains and was transported to the hospital. Doc. 1, p. 8, ¶21; Doc. 1, p.9, ¶28. According to the Plaintiff, he was charged with evading arrest, but those charges were later dropped. Doc. 1, p.13, ¶40. He also claims that the force used to detain him was excessive, and that he was denied reasonable medical care. The rest of Plaintiff's claims stem from Plaintiff's feeling that Montgomery County officials did not respond properly to his complaint against the officers and conspired with each other to retaliate against Plaintiff.

## ISSUES TO BE RULED UPON; STANDARD OF REVIEW

Montgomery County seeks dismissal of all federal claims brought against it, and the other defendants in their official capacities, pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) should be granted when the claimant fails to demonstrate that he can prove

any facts upon which would entitle him to relief. *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996). The complaint must be liberally construed in the claimant's favor and all factual allegations taken as true. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). However, "[t]he court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save the complaint." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1996). "A statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient." *Id.* A conclusory statement should not survive a motion to dismiss for failure to state a claim. *Fernandez – Montez,* 987 F. 3d at 284.

District Attorney Ligon seeks dismissal of all federal claims against him pursuant to Fed. R. Civ. P. 12(b)(6) because prosecutors are absolutely immune from § 1983 liability for their conduct in initiating a prosecution and presenting the State's case insofar as that conduct is intimately associated with the judicial phase of the criminal process. *Imbler v. Pachetman*, 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed. 2d 128 (1976).

Sheriff Gage seeks dismissal of all federal claims against him pursuant to Fed. R. Civ. P. 12(b)(6) because the Plaintiff has not alleged facts sufficient to establish a prima facie case under § 1983.

The Defendant Deputies seek dismissal of all federal claims against them because they are entitled to qualified immunity. Government officials are entitled to qualified immunity if their conduct does not violate a "clearly established" right of which a reasonable person should have known. *Harlow v. Fitzgerald*, 47 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed. 396 (1982). Until it is determined whether the plaintiff has alleged a violation of clearly established law, discovery should not be allowed. *Id.*

Montgomery County seeks dismissal of all state claims against it pursuant to Fed. R. Civ. P. 12(b)(1) because it has not waived its sovereign immunity. Sovereign immunity from suit defeats a trial court's subject matter jurisdiction. *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225 (2002).

Montgomery County also moves that the state claims against the rest of the Defendants be dismissed pursuant to TEX. CIV. PRAC. & REM. CODE § 101.106 which allows the governmental entity to move that its employees, who have also been named as defendants in a suit, be immediately dismissed if the plaintiff sues both the governmental entity and its employees.

Alternatively, Montgomery County moves for a more definite pleading pursuant to Fed. R. Civ. P. 12(e). Movant is entitled to a remedy when the pleading is so vague or ambiguous that a party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e).

## SUMMARY OF ARGUMENT

Montgomery County seeks dismissal of all claims against it, and the other defendants in their official capacities, because Plaintiff has failed to allege sufficient facts to establish a "policy" or "custom" which was the cause of the alleged violations of Plaintiff's constitutional rights. Plaintiff only makes conclusory statements about conspiracies and unspecified "policies" without providing facts to support such claims beyond the one incident on which he bases this suit.

District Attorney Ligon seeks dismissal of all claims against him because he is entitled to prosecutorial immunity. All claims made against District Attorney Ligon stem from his prosecutorial duties, and therefore, he is entitled to absolute immunity from suit.

Sheriff Gage seeks dismissal of all claims against him because the Plaintiff has not alleged facts to support any claim at all. In fact, he has not alleged any actions that the Sheriff individually took that deprived him of any rights.

The Defendant Deputies seek dismissal of all federal claims against them because the Plaintiff has failed to allege facts to show that the Defendant Deputies committed any conduct that violated clearly established law and therefore, Defendant Deputies are entitled to qualified immunity. Plaintiff's claim that his Fourth Amendment right against unreasonable searches was violated should be dismissed because the Defendant Deputies were acting pursuant to the community caretaking exception to the warrant requirement; and, even if the search was unreasonable, the Defendant Deputies are still entitled to qualified immunity because the law was not clearly established regarding the community caretaking function of police officers. Also, Plaintiff's First Amendment claim should be dismissed because Plaintiff was not detained based upon his speech alone. According to the Plaintiff, only after he turned to go inside, did the Defendant Deputies detain him. Therefore, Plaintiff has failed to state a violation of his First Amendment rights. Plaintiff's Fourth Amendment right against the use of excessive force was not violated because the Defendant Deputies did nothing more than take Plaintiff to the ground. Plaintiff's claim that he was denied reasonable medical care should be dismissed because the Defendant Deputies immediately asked that EMS come to the scene, and when this was not satisfactory to Plaintiff, the Defendant Deputies took Plaintiff to the hospital.

Montgomery County seeks dismissal of all state claims against it because it has not waived its sovereign immunity. Furthermore, Montgomery County moves that the state claims against all other defendants in their individual capacities be dismissed pursuant to the Election of Remedies provisions of the Texas Tort Claims Act.

## ARGUMENT AND AUTHORITIES

**Federal Claims**

I.     THE CLAIMS AGAINST MONTGOMERY COUNTY, TEXAS, DISTRICT ATTORNEY LIGON, SHERIFF GAGE, DEPUTY DEWEY AND DEPUTY ORTIZ, IN THEIR OFFICIAL CAPACITIES, SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE THE PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE THAT ANY DEFENDANTS ACTED IN ACCORDANCE WITH AN OFFICIAL POLICY OR CUSTOM.

The claims against Montgomery County, Texas and, the other defendants in their official capacities, should be dismissed. A suit against a defendant in his official capacity is essentially a claim against the county. *Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir.), *cert. denied*, 519 U.S. 817, 117 S.Ct. 68 (1996)("[a] suit against the Sheriff in his official capacity is a suit against the County"); *see Smith v. Davis*, 999 S.W.2d 409, 419 (Tex. App. – Dallas 1999)(citation omitted)("i[n] suing employee in his official capacity, a plaintiff seeks, in effect, to impose liability on the governmental unit the employee represents rather than on the employee himself.") Therefore, the claims against the defendants in their official capacities are claims against the county and any defense that the county may assert, could be asserted against the claims against the defendants in their official capacities as well.

In order to state a "1983 claim against a municipality, a plaintiff must show that officials acted in accordance with an official policy or custom." *James v. Texas Collin County*, 535 F.3d 365, 375 (5th Cir. 2008). Further, establishing liability against a municipality requires proof of three elements: (1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694, 658 S.Ct. 2018, 2037 (1978)). The Fifth Circuit has held that "municipalities are not vicariously liable for rights violations committed by their employees, but they are liable whenever 'their

official policies cause their employees to violate another person's constitutional rights" *James v. Texas Collin County*, 535 F.3d at 375 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122, 108 S.Ct. 915, 923(1988)).

County liability can also be predicated on an official "custom" or "practice" which is most commonly defined as a "persistent, widespread practice of municipal officials or employees," which, although not authorized by an officially adopted and promulgated policy, is so common and well-settled as to constitute a custom which fairly represents municipal policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). "Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski* 237 F. 3d at 579 citing *Webster*, 735 F. 2d at 842.

Inadequate training may fulfill the requirement of an official policy or custom. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 820, 205 S.Ct. 2427, 85 L.Ed.2d 791 (1995). However, in *Tuttle*, the Supreme Court held that the district court's instruction to the jury that the jury could "infer," from a "single unusually excessive use of force . . . that it was attributable to inadequate training or supervision amounting to 'deliberate indifference' or 'gross negligence' on the part of the officials in charge" was unwarranted. *Id.* at 821.

In this case, Plaintiff makes conclusory statements that do not amount to any more than mere suspicions; and the allegations related to inadequate training are insufficient to state a claim because the Plaintiff has not pled facts that show that the allegation of inadequate training is anything more than an inference from one alleged incident of excessive force.

The Plaintiff states in his Complaint that when he was speaking with District Attorney Ligon about the charge against him for evading detention, that District Attorney Ligon told him

to get a bail bond and surrender at the jail. Doc. 1, p.12, ¶ 37. The Plaintiff alleges that District Attorney Ligon then told a subordinate to "call down to the jail and tell them not to beat Mr. Harvey when he comes in to surrender." Id. The Plaintiff then infers from this statement that "beating is customary at the Montgomery County Jail." Id. If this is the Plaintiff's attempt to establish a custom which caused a violation of his rights, he has failed. Even if this statement was made, this statement could not be used to form the basis of a "custom" or practice" for purposes of § 1983 liability because he does not even allege that he was beat on in the Montgomery County Jail. Therefore, there is no injury as a result of this alleged "custom."

Other statements made by the Plaintiff in his Complaint are only expressing the Plaintiff's suspicions. The Plaintiff says that "[District Attorney Ligon and Sheriff Gage] condone [unconstitutional searches], routinely"(Doc. 1, p. 14, ¶ 45); that Sheriff Gage and District Attorney Ligon "routinely, assists in the illegal acts and look the other way" (Doc. 1, p.15, ¶47); that the "deputies act as though there is no constitution and they will do as they please" which is "in fact, the policy" (Doc. 1, p. 14, ¶ 48);  that there "is an implied policy that officers of the law will not be punished or prosecuted for such acts" (Doc. 1, p.15, ¶47); that the Defendant acted with "deliberate indifference . . .  on a routine basis (Doc. 1, p.15, ¶50); and that "illegal activities  . . . are condoned by Montgomery County and the District Attorney. Doc. 1, pg. 15, ¶51. These statements only voice the Plaintiff's suspicions and are not based on any facts nor do they show what the policy or custom might be. He must allege that a policy or custom caused a violation of his rights, not that the violation of his rights was the custom. These are just the type of conclusory statements that cannot survive a Motion to Dismiss for Failure to State a Claim under *Fernandez – Montes.*  How can the violation be both the cause and the violation? The only policy that could give rise to the violations of which he complains would be one that

was just to "violate citizen's rights." In order for the Court to reach the conclusion that this "policy" is what is causing the alleged violations, the Court would have to "conjure up unpled allegations or construe elaborately arcane scripts" which is unnecessary under *Campbell.*

Plaintiff alleges in his request for relief that Montgomery County failed to properly train the deputies so that they would not use excessive force when detaining arrestees. Doc. 1, p. 19, ¶61. These statements are again, merely conclusory, and the Plaintiff appears to be making an attempt to infer a policy of inadequate training on a single incident of misconduct, which is insufficient.

Therefore, in conclusion, Montgomery County, and all of the other Defendants in their official capacities, should be dismissed from this action on the basis that the Plaintiff has failed to make a claim for which relief can be granted because he has failed to allege a policy or custom which caused an alleged violation of his rights. He merely makes conclusory statements, voicing his suspicions, and these are not enough to survive a motion to dismiss.

II.     THE CLAIM AGAINST DISTRICT ATTORNEY LIGON, IN HIS INDIVIDUAL CAPACITY, SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE HE ACTED, IF AT ALL, SOLELY AS A PROSECUTOR, AND IS THEREFORE ENTITLED TO ABSOLUTE IMMUNITY.

Prosecutors are absolutely immune from § 1983 liability for their conduct in initiating a prosecution and in presenting the State's case insofar as that conduct is intimately associated with the judicial phase of the criminal process. *Imbler v. Pachetman*, 424 U.S. at 430-431. This defense applies even when officials maliciously violated a plaintiff's constitutional rights. *See, e.g. Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S.Ct. 1218, 18 L.Ed.2d 288 (1967). District Attorney Ligon is the District Attorney for Montgomery County. Doc. 1, p.2, ¶ 4. Plaintiff's only cognizable allegation against District Attorney Ligon is that he, as District Attorney, brought

"fraudulent charges of evading detention and fraudulently prosecuting Plaintiff for 16 months." Doc. 1, p. 12, ¶ 40. This alleged violation is clearly within the scope of absolute prosecutorial immunity, even if done maliciously.

The Plaintiff also states that Defendant Montgomery County "turned to the Montgomery County District Attorney for assistance in discrediting Plaintiff's sworn complaint," that the "Plaintiff was personally advised that the retaliation was taking place, and that "Bret[t] Ligon told Plaintiff that he did not like Plaintiff, personally and that the Plaintiff was obviously, an uneducated man." Doc. 1, p. 11, ¶ 36. These allegations are nothing more than suspicions of some sort of conspiracy between Montgomery County and District Attorney Ligon or just insulting remarks allegedly made towards the Plaintiff. None of them show or could show that there is any violation of the Plaintiff's constitutional rights.

In conclusion, the claim against District Attorney Ligon, in his individual capacity, should be dismissed because any actions taken by District Attorney Ligon were clearly in his prosecutorial capacity and he is therefore entitled to absolute immunity.

III.    THE CLAIM AGAINST SHERIFF TOMMY GAGE, IN HIS INDIVIDUAL CAPACITY, SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE THE PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE UNDER § 1983 AGAINST HIM.

To establish a prima facie case under § 1983, the plaintiff must allege two elements: (1) the action occurred "under color of law" and (2) the action is a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)(overruled on other grounds). To establish individual liability, the Plaintiff must complain of an action taken by the individual. He cannot bootstrap his claim against an individual defendant to a claim made against that defendant in his official capacity (which is essentially a claim against the municipality). In this case, the Plaintiff hardly mentions the

individual actions of Sheriff Gage in his Complaint. He explains that he received a letter from the Sheriff's Office exonerating the two deputies. Doc. 1, p. 13-14, ¶ 44. The Plaintiff also explains that when he approached Sheriff Gage to ask that he "simply pay for the damage to Plaintiff's body," that Sheriff Gage refused. Doc. 1, p. 14, ¶ 49. The first allegation cannot even be attributed to Sheriff Gage and the only mention of any action that Sheriff Gage personally took, was that he refused the Plaintiff's request to pay for damages. These two accusations are barely even actions, if at all, and the Plaintiff has failed to show how these "actions" could have possibly caused any violation of his constitutional rights.

Every other mention of Sheriff Gage by Plaintiff in his Complaint relates to either the Defendant Deputies, or some other conclusory statement about the Sheriff's Office participating in some sort of conspiracy against Plaintiff. Therefore, the claims against Sheriff Gage, in his individual capacity, should be dismissed for failure to state a claim because the Plaintiff has failed to allege any actions personally taken by Sheriff Gage that could have violated his rights.

IV. THE CLAIMS AGAINST MONTGOMERY COUNTY SHERIFF'S DEPUTIES STEVEN ORTIZ AND JONATHAN DEWEY SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE THE PLAINTIFF HAS NOT ALLEGED ANY VIOLATIONS OF CLEARLY ESTABLISHED LAWS.

Government officials are generally shielded from liability from damages insofar as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 47 U.S. at 818. Officials performing discretionary functions have qualified immunity as long as their conduct could "reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)(citing *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Qualified immunity

protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 US 335, 344-345, 106 S.Ct. 1092, 1096, 89 L.Ed. 2d 271(1986).

Until it is determined whether the plaintiff alleged a violation of a clearly established statutory or constitutional right, discovery should not be allowed. *Harlow v. Fitzgerald,* 47 U.S. at 818. First, a court may consider whether the plaintiff has even asserted a violation of a constitutional right. *See Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Then a court must determine whether that right that was alleged to have been violated was clearly established. *See Anderson v. Creighton*, 483 U.S. at 638-39. In order for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* A decision by the U.S. Supreme Court is not necessary to establish this notice, but if the courts of appeal have differing opinions on the issue, that may show that the law was not "clearly established." *United States v. Lanier,* 520 U.S. 259, 268-69, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

A. The Defendant Deputies did not violate Plaintiff's Fourth Amendment right against unreasonable searches when they allegedly entered Plaintiff's curtilage because the search, if any, was reasonable under the circumstances. Even if Plaintiff's right was violated, the Defendant Deputies are entitled to qualified immunity.

The U.S. Supreme Court has recognized a community caretaking exception to the Fourth Amendment's warrant requirement in *Cady v. Dombrowski*. 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 703 (1973). In *Cady*, the Supreme Court found that the search of an automobile was constitutional because the search by the police was motivated by a desire to protect the public. *Id.* In the *United States v. Rohrig*, the Sixth Circuit held that the police's entry into a home was justified by exigent circumstances when the police entered a home in the middle of the night to turn down loud music that was disturbing the neighbors. 98 F.3d 1506, 1520-21 (6th Cir. 1995); *See also, United States v. Quezada*, 448 F.3d 1005, 1008 (8th Cir. 2006)(Eighth Circuit held that

an officer acting in a community caretaking role may enter a home when the officer has a reasonable belief that an emergency exists that requires attention). However, some Circuits have distinguished the search of an automobile under the "community caretaking" function from a search of a home pursuant to the same exigency. *See Ray v. Township of Warren*, 626 F.3d 170 (3rd Cir. 2010); *United States v. Bute*, 43 F.3d 531, 535 (10th Cir. 1994); *United States v. Erickson*, 991 F.2d 529, 533 (9th Cir. 1992); *United States v. Pichany*, 687 F.2d 204 (7th Cir. 1982).

In this case, the Plaintiff appears to be claiming that the Defendant Deputies violated his Fourth Amendment right against unreasonable searches when the Defendant Deputies entered his curtilage area and allegedly "covertly began surveillance of Plaintiff and his wife." Doc. 1, p. 5, ¶ 13. According to the Plaintiff, the circumstances that led to this alleged surveillance were that his son, Richard Harvey, Jr., who had taken a cordless phone next door, called 9-1-1, said that the neighbor was ready for the police, and that apparently the neighbors wanted the police called because he was lying in her bedroom. Doc. 1, p. 3, ¶ 8. According to Dispatch Records[1], Richard Harvey, Jr. was not making sense. Exhibit "A", p. COU00004, Line 18. And according to the Plaintiff, himself, his son was "drunk as a skunk."[2] (Exhibit "B", DM-10762 at 32:07-32:40). When the dispatcher attempted to call the number back, there was no answer. Exhibit "A", p. COU00004, Line 26. Even if the Defendant Deputies did "search" Plaintiff's curtilage area, it was reasonable under the circumstances. The facts are undisputed that a male had called 9-1-1 emergency dispatch and requested police come to a residence and had stated that he was laying in someone else's bedroom where apparently he was not welcome and upon redial to the

---

[1] Defendants ask this Honorable Court to take judicial notice of the public Dispatch Records attached as Exhibit "A". *See Nisselson v. Lernout*, 469 F.3d 143, 150 (5th Cir. 2006).
[2] Defendants ask this Honorable Court to take judicial notice of the tape recordings of Plaintiff with the Montgomery County Internal Affairs Investigator, which are public records, attached as Exhibit "B".

*Defendants Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6),and*
*TEX. CIV. PRAC. & REM CODE §101.106 and in the Alternative, Motion for More Definite Statement*

residence, there was no answer. Furthermore, the Defendant Deputies were informed that the man was not making any sense via the Dispatcher's Notes. Exhibit "A", p. COU00004, Line 18. With this information, it would not be unreasonable for the Defendant Deputies to fear that someone, possibly under the influence of some sort of substance, had broken into a home or caused some sort of injury. The Defendant Deputies alleged "search" of the curtilage area was a reasonable action for the deputies to try to ascertain whether or not there were any injuries or an impending emergency in the home from where the 9-1-1 call originated. This "search" was pursuant to a community caretaking exception to the warrant requirement and therefore, the Plaintiff has not stated a claim that his Fourth Amendment rights were violated. Even Plaintiff admits that he could understand the police looking around his house to see if there was anything wrong, "but they should have rung the doorbell." (Exhibit "B", DM-10804, 15:40-16:30).

If this Court finds that the community caretaking exception does not apply to searches of homes or the curtilage area around homes, then these officers are still entitled to qualified immunity because the contours of this right are not clearly established. In *Ray*, even though the Court held that the community caretaking exception did not apply to searches of homes, it still found that the officers that had entered the home were entitled to qualified immunity. *Ray v, Township of Warren*, 626 F.3d at 177.  In *Ray*, officers entered the home after receiving a 9-1-1 call from a woman who was concerned for the welfare of her daughter who she believed to be inside the home with her ex-husband. *Id.* at 171-72. The officers in *Ray* circled the perimeter of the house and knocked on doors and windows and called the home phone of the residence but received no response. *Id.* The Third Circuit held that even though the entry into the home was an illegal search, that the officers were still entitled to qualified immunity because "given the conflicting precedents on this issue from other Circuits, [they] could not say it would have been

apparent to an objectively reasonable officer that entry into Ray's home . . . was a violation of law." *Id.* at 177. The facts of the instant case are very similar to *Ray*. As in *Ray*, the Defendant Deputies responded to a 9-1-1 call to a residence where, conceivably, there could have been someone inside that was in need of help. Like in *Ray*, calls to the home went unanswered. However, in *Ray*, the officers actually entered the home. Here, the Defendant Deputies only entered into an area that the Plaintiff claims to be his private curtilage area. Even if they had begun "surveillance" upon him and his wife, this would not be unreasonable given the information that the Defendant Deputies had at that time.

In conclusion, Plaintiff's claims against the Defendant Deputies for violating his Fourth Amendment right against unreasonable searches should be dismissed for failure to state a claim because the Defendant Deputies were acting pursuant to the community caretaking exception. In the alternative, this case should be dismissed because there was no violation of a clearly established right because, given the conflicting precedents regarding community caretaking searches in homes, an objectively reasonable officer would not be on notice that the search was illegal and therefore the Defendant Deputies are entitled to qualified immunity.

B. The Defendant Deputies did not violate Plaintiff's First Amendment right because the Defendant Deputies did not arrest Plaintiff based on his speech.

The Plaintiff appears to bring a claim that his First Amendment right to freedom of speech was violated because the Defendant Deputies detained or arrested him based on his speech alone. The First Amendment protects a significant amount of criticism aimed toward police. *Enlow v. Tishomingo County, Miss.*, 962 F.2d 501, 509 (5th Cir. 1992). However, the Plaintiff is very specific about the chain of events leading up to his detention. According to the Plaintiff, after the Defendant Deputies came into contact with him and the Plaintiff asked the Defendant Deputies to leave the property, the following occurred:

*Defendants Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and*
*TEX. CIV. PRAC. & REM CODE §101.106 and in the Alternative, Motion for More Definite Statement*

" h.    [Plaintiff] told Defendants that Plaintiff was going to go into his house and call
the Sheriff to complain, after Defendants refused to identify their superior;

i.    [Plaintiff] turned his back to the Defendants and proceeded to go into his home to
get a telephone with which to call the Sheriff, after previously warning
Defendants of the fact that he was going to take this action, if they did not leave
his private property; . . .

17.    As a result of Plaintiff's verbal complaints and threat that he was going to retreat
into his home and call the Sheriff to complain, the deputies seemed to become
enraged.

18.    **Upon turning his back, opening his glass storm door and placing one foot
into his home**, suddenly and without any warning, Defendants, Deputy Dewey
and Deputy Ortiz, physically attacked Plaintiff."

Doc. 1, p. 7, ¶ 16-18. (emphasis added).

According to the Plaintiff's chain of events, the Defendant Deputies did not arrest or

detain him based upon his speech, but rather because Plaintiff turned his back and began to go

into his house. The Defendant Deputies may have feared that the Plaintiff was going to go inside

to get a weapon. But regardless of their beliefs, it is clear that Plaintiff was not arrested or

detained based upon his speech alone. Therefore, Plaintiff's claim that his First Amendment

rights were violated should be dismissed for failure to state a claim because the Plaintiff's

rendition of the facts in his Complaint forecloses the possibility that the Defendant Deputies

detained Plaintiff based on his speech alone.

C.    The Plaintiff's claim that the Defendant Deputies used excessive force in their
detention of Plaintiff should be dismissed because the force that they used was
objectively reasonable and, even if the Defendant Deputies force was excessive, they
did not violate a clearly established right and are therefore entitled to qualified
immunity.

All claims of the use of excessive force by law enforcement officers must be analyzed

under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386,

388, 109 S.Ct. 1865, 104 L.Ed.2d 443. "The 'reasonableness' of a particular use of force must be

judged from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight." *Id.* "'Not every push or shove, even if it may later seem unnecessary'

violates the Fourth Amendment. *Id.* at 396 (citing *Johnson v. Glick*, 481 F. 2d 1028, 1033, cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Furthermore, what would normally be considered reasonable force does not become unreasonable force because of a pre-existing condition of the detained. *See Rodriguez v. Farrell*, 280 F. 3d 1341, 1352-53 (11th Cir. 2002). *See Silverman v. Ballantine*, 694 F. 2d 1091, 1096 (7th Cir. 1982)(concluding that the force used, as a matter of law, was not excessive, even though the arrestee died of a heart attack during the arrest).

In this case, the force used to detain the Plaintiff was reasonable under the circumstances. The Plaintiff does not allege that the Defendant Deputies did anything other than bring him to the ground. The Plaintiff stated that he weighed around 275 pounds (Exhibit "B", DM-10826, 7:45-8:15); that the Defendant Deputies never kicked, or punched him or anything (Exhibit "B", DM-10762, 20:57-21:06); and when explaining to the Internal Affairs Investigator about which particular deputy brought him down, he said that it had to be the larger one because "the only one big enough to do it did it; big enough to hoist a two hundred and seventy something pound man up." Exhibit "B", DM-10826, 7:45-8:15). The Plaintiff appears to base his claim that the Defendant Deputies used excessive force on the basis that his preexisting conditions were aggravated (Doc. 1, p.8-9, ¶23-24) and because "the Plaintiff's use of speech is not a crime and any use of force is clearly excessive." (Doc. 1, p.10, ¶31). A claim that the Defendant Deputies used excessive force cannot stand on the basis of these two propositions. Furthermore, the reasonableness of their actions must be viewed in light of the circumstances that the officers were facing at the time. At the time, the Defendant Deputies may have feared that the Plaintiff was attempting to retrieve a weapon and wanted to stop him. According to the Plaintiff, he is a large man and it would have taken another large man to bring him down; and the Defendant

Deputies never kicked or punched him. Therefore, the Plaintiff's claim that excessive force was used against him should be dismissed because he cannot show that the use of force in this instance was unreasonable under the circumstances.

Conduct unreasonable under the Fourth Amendment could still be objectively reasonable for the purpose of qualified immunity. *See Malley v. Briggs*, 475 U.S. at 344-45. In this case, even if the force used is ultimately determined to be unreasonable, the Defendant Deputies should still be entitled to qualified immunity because qualified immunity applies unless no reasonable officer under the same circumstances could have believed his or her conduct was legal. *See Id.* "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 US 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Even if the force used is ultimately determined to be unreasonable, the Defendant Deputies should still be entitled to qualified immunity because another reasonable officer under the same circumstances would not have known, based on current precedent, that his or her conduct was illegal.

D. <u>The Plaintiff's claim that the Defendant Deputies failed to provide him with reasonable medical care should be dismissed because the Plaintiff cannot show that they failed to provide medical care or acted with deliberate indifference.</u>

Plaintiff claims violations of his Fifth, Eighth and Fourteenth Amendment rights. The Plaintiff appears to be trying to make a claim that he was denied due process because he was denied reasonable medical care under the Fourteenth and Fifth Amendments. The Fifth Amendment's due process clause only applies to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499-500, 74 S.Ct. 693, 694-95, 98 L.Ed. 884 (1954). This particular claim should be analyzed under the Fourteenth Amendment and therefore, there are no other cognizable Fifth Amendment claims.  Similarly, the Plaintiff's claim that his Eighth Amendment right against

cruel and unusual punishment should be dismissed because he has never been convicted of anything to be subject to any punishment. Pretrial detainees look to the Fourteenth Amendment for their rights to reasonable medical care and convicted persons look to the Eighth Amendment for their right to same. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 2007). Therefore, all Fifth and Eighth Amendment claims made by the Plaintiff should be dismissed.

The Plaintiff's claim that his Fourteenth Amendment right was violated should be dismissed as well because Plaintiff cannot prove that he was denied medical care or that the Defendant Deputies acted with deliberate indifference. Assuming that the Plaintiff was a "pretrial detainee", to allege a violation of this right, the Plaintiff must show that he was denied medical care during his confinement and that the "state official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Id.* at 650.

In the instant case, the Plaintiff cannot state a claim because the Defendant Deputies did provided him with medical care. According to the Plaintiff's Complaint, the Defendant Deputies drove him to the hospital. Doc. 1, p. 10, ¶ 29. However, Plaintiff fails to mention that within *two minutes* of his detention, Defendant Deputies had also requested EMS to come to the scene because the Plaintiff was complaining of chest pains, and within fifteen minutes of the request, paramedics were at the scene. (cite dispatch notes). Furthermore, according to the Plaintiff, the doctor at the Emergency Room at the hospital released him because the doctor said that he had only had a panic attack. (Exhibit "B", DM-10762, 27:00-27:20). Plaintiff does not claim in this Complaint that he indeed had a heart attack or that if he had gotten to the hospital sooner, it could have saved him from further injury. Even if there was an excessive lapse in time, it did not

cause Plaintiff's injuries and there are no allegations that any lapse in time was caused by the "deliberate indifference" of the Defendant Deputies. Therefore, the claim against the Defendant Deputies for failing to provide medical care should be dismissed because the Defendant Deputies immediately requested that EMS come to the scene and the Defendant Deputies took the Plaintiff to the hospital themselves for what turned out to be a panic attack.

**State Claims**

V.    THE PLAINTIFF'S STATE CLAIMS AGAINST MONTGOMERY COUNTY, TEXAS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. PRO. 12(b)(1) BECAUSE SOVEREIGN IMMUNITY WAS NOT WAIVED AND MONTGOMERY COUNTY IS IMMUNE FROM SUIT.

In order for a sovereign to be sued, it must waive its sovereign immunity from suit and accept liability. *Wichita Falls State Hospital v. Taylor,* 106 S.W.3d 692, 694-95 (Tex. 2002). In Texas, consent to suit must ordinarily be found in a constitutional provision or legislative enactment. *Id.*

Under the Texas Torts Claims Act, governmental immunity is waived under certain circumstances. TEX. CIV. PRAC. & REM. CODE § 101.021. A governmental unity is generally liable when a tort is committed by an employee (acting within the scope his or her employment) or when personal injury or death was caused by a condition or use of tangible or real property, if the governmental unit would be liable if it were a private individual. Id.

However, the waiver of Section 101.021 only applies to a claim against a public agency that arises from an action of an employee of the public agency and that involves providing 9-1-1 service or responding to a 9-1-1 emergency call only *if* the action violates a "statute or ordinance applicable to the action." TEX. CIV. PRAC. & REM. CODE § 101.062. The term "public agency" as used in § 101.062 is given the meaning assigned to that term by § 771.001 of the Health and Safety Code which includes a county. TEX. HEALTH AND SAFETY CODE § 711.001.

In this case, the Plaintiff has not alleged that sovereign immunity has been waived and does not plead facts to support that it has been. Even if he could prove that some sort of tort occurred, the Defendant Deputies were responding to a 9-1-1 emergency call and Plaintiff has not alleged and cannot show that the Defendant Deputies violated a statute or ordinance applicable to the action, therefore sovereign immunity has not been waived.

VI.    MONTGOMERY COUNTY, TEXAS MOVES THAT ALL STATE CLAIMS AGAINST ALL OTHER DEFENDANTS IN THIS COMPLAINT BE DISMISSED.

All state claims should be dismissed against the other Defendants because of either absolute or qualified immunity.[3] As stated above, District Attorney, Ligon is entitled to absolute prosecutorial immunity and the Plaintiff has not stated any cognizable claim, state or otherwise, against Sheriff Gage. Additionally, as stated above, even if a violation of Plaintiff's constitutional rights occurred, the Defendant Deputies, they are nonetheless entitled to qualified immunity based on the allegations of the Plaintiff's Complaint, the Plaintiff's own statements, and the Dispatch Notes.

If any state law claims remain in which official immunity does not apply, Montgomery County moves that all remaining state law claims against employees be dismissed. "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106.

VII.    ALTERNATIVELY, DEFENDANTS REQUEST A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(e) BECAUSE THE COMPLAINT IS SO VAUGE AND AMBIGUOUS THAT DEFENDANT CANNOT REASONABLY PREPARE A RESPONSE.

---

[3] Official immunity is available to government officials or employees sued in their individual capacity for state law claims. *See Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994).

*Defendants Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6),and TEX. CIV. PRAC. & REM CODE §101.106 and in the Alternative, Motion for More Definite Statement*

Under Fed. R. Civ. Pro. 12(e), "a party may move for a more definite statement of pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

The Plaintiff's complaint does list various rights which allegedly been violated by Defendants. Plaintiff lists violations of his First, Fourth, Fifth, and Fourteenth Amendment rights, as well as state constitutional and other state claims. It is difficult to determine which claims go with which Defendant. Defendants request that Plaintiff clearly list, state and federal, what specific claims he has against each Defendant and what facts support each of those particular claims and what relief he seeks for each individual claim.

### CONCLUSION

In conclusion, all of Plaintiff's federal claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The state claims against Montgomery County should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Montgomery County has not waived its sovereign immunity and the state claims against the other defendants should be dismissed pursuant to TEX. CIV. PRAC. & REM. CODE § 101.106. In the alternative, Defendants move that the Plaintiff provide a more definite statement pursuant to Fed. R. Civ. P. 12(e).

Respectfully submitted,

DAVID K. WALKER
Montgomery County Attorney


By:    /s/ Rayborn C. Johnson, Jr.
        Rayborn C. Johnson, Jr.
        Assistant County Attorney
        207 W. Phillips, First Floor
        Conroe, Texas 77301
        Telephone: (936) 539-7828
        Telecopier: (936) 760-6920
        E-mail: ray.johnson@mctx.org
        S.B.O.T. # 10820500
        S.D.O.T. # 21073

        ATTORNEY FOR DEFENDANTS
        MONTGOMERY COUNTY,
        TEXAS, BRETT LIGON, TOMMY
        GAGE, JONATHAN DEWEY AND
        STEVEN ORTIZ

### CERTIFICATE OF SERVICE

I hereby certify that, in compliance with Tex.R.Civ.P. 21 and 21a, Tex.R.App.P. 9.5(d) and (e), Fed.R.Civ.P. 5, or Fed.R.App.P. 25(b), (c) and (d), a true copy of the foregoing and all attachments have been forwarded to all opposing counsel or to the last known address of parties, if Pro Se, on July 14, 2011, by First Class United States Mail, postage prepaid, unless another method of service is stated, addressed as follows:

Richard W. Harvey, Sr.
53 Laughing Brook Court
The Woodlands, Texas 77380

        /s/ Rayborn C. Johnson, Jr.
        Rayborn C. Johnson, Jr.